IN UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANDRA KOUROUNIS,

                    Plaintiff,

v.                                      Case No.

HAGAN HOLDING COMPANY d/b/a
HOWCO ENVIRONMENTAL
SERVICES,
a Florida Profit Corporation

                    Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff SANDRA KOUROUNIS ("Plaintiff" or "Kourounis") sues Defendant, HAGAN HOLDING COMPANY d/b/a HOWCO ENVIRONMENTAL SERVICES ("Defendant" or "HOWCO), and states as follows:

## CAUSES OF ACTION

1.    This is an action brought against Defendant for unlawful discrimination and retaliation practices under Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and 42 U.S.C. § 1981. The action seeks declaratory, injunctive, and other equitable relief as well as monetary damages, costs, and attorney's fees.

## PARTIES

2.    Plaintiff Sandra Kourounis is an individual and resident of Florida who resides in Pinellas County, Florida.  At all material times, Kourounis was employed by Defendant, Hagan Holding Company d/b/a HOWCO Environmental Services as

an Inside Sales Representative. Kourounis performed work for the Defendant in Pinellas County, Florida.

3.     Defendant Hagan Holding Company d/b/a HOWCO Environmental Services is a used oil recovery and refining company with its corporate office located in Pinellas County, Florida.

## JURISDICTION AND VENUE

1.     Subject matter jurisdiction regarding the federal law claims is proper in this Court under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims per 42 U.S.C. § 1367 as the Florida Civil Rights Act claims are so related to the federal claims that they form part of the same case or controversy.

2.     Personal jurisdiction and venue are proper in the United States District Court for the Middle District of Florida because at all times material, Defendant resided in and/or conducted business in, and significant events giving rise to Plaintiff's claims occurred within the Florida counties comprising the U.S. District Court, Middle District of Florida.

3.     Venue is proper in the Tampa Division under Local Rule l.02(b)(5) since the action accrued in Pinellas County, Florida over which the Tampa Division has jurisdiction.

4.     All conditions precedent to maintaining this action have occurred, been performed, are excused, and/or have been waived.

## STATUTORY COVERAGE AND ELIGIBILITY

5.      At all times material, Defendant was an "employer" within the meaning of Fla. Stat. § 760.02(7) and 42 U.S.C. § 2000e who had fifteen (15) or more employees in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

6.      At all times material, Defendant was subject to the proscriptions against race, national origin, and color discrimination as well as retaliation under 42 U.S.C. § 1981.

7.      On or around November 20, 2019, Plaintiff filed a charge of discrimination and retaliation which is attached to this Complaint as **Exhibit A** (hereinafter the "Charge"). The Charge was filed with the Equal Employment Opportunity Commission (EEOC) and deemed dual filed with the Florida Commission on Human Relations (FCHR) and the Pinellas Office of Human Rights (POHR). The FCHR failed to make any determination within 180 days of the filing date. The EEOC issued its Right to Sue letter on September 24, 2021. In the letter, the EEOC found reasonable cause to believe that violations of Title VII of the Civil Rights of 1964 occurred with respect to some or all of the matters alleged in the Charge,

## GENERAL ALLEGATIONS

8.      On or around November 26, 2018, Plaintiff became employed with Defendant in New Business Development full time earning $14 per hour.

9.      Plaintiff was hired by Defendant's agent, Tammy Perry, a white female who became Plaintiff's direct supervisor.

10.     Plaintiff initially worked on the sales floor with Perry and three men who had the titles of "New Business Development." Plaintiff was the only female employee with the title of New Business Development.

11.     Plaintiff is a Latina female with brown skin who was born in Colombia.

12.     In January 2019, Rich Lowman was brought on to the company to function as Perry's supervisor. Lowman is a white male.

13.     After Lowman was hired by Defendant, he engaged in a pattern of discriminatory behavior towards Plaintiff that was directed at Plaintiff's status as a Latina woman of color who was born outside of the United States.

14.     Lowman customarily spoke to male coworkers and white female coworkers on a much friendlier basis than with Plaintiff. For example, Lowman would engage in small talk with other male employees, but when Plaintiff tried to make conversation with Lowman, he exclaimed "None of your business!" in front of other employees in a manner that was highly rude, hostile, and embarrassing to Plaintiff as the conduct happened on the sales floor in front of the other sales workers. This was the first time Plaintiff ever met Lowman.

15.     Plaintiff complained about the above conduct to Perry, who acknowledged that Lowman's conduct was "weird" and that she was taken aback by the comment. Perry could visibly see that the comment was upsetting to Plaintiff when it was made.

16.     After the initial interaction between Plaintiff and Lowman, Lowman began meeting with each sales employee in a joint meeting with Perry. However, as

4

an exception, Lowman chose to meet with Plaintiff alone and without Perry present. During this meeting, Lowman asked Plaintiff "why are you such an angry person?" Plaintiff denied being an angry person and asked Lowman what he meant. Lowman responded by asking Plaintiff where she was from, and she explained that she was born in Colombia and raised in New Jersey. Lowman replied "I know all about you people" and added that his "wife is from the Caribbean—she's like that, too." Plaintiff found these comments demeaning, belittling, and harassing towards her based on stereotypes associated with Latina women from South America, especially since none of the comments from Lowman had anything to do with her job performance combined with the fact that Plaintiff routinely saw Lowman be very friendly with the male employees and white female employees.

17.    After the above-referenced meeting, Plaintiff went directly to Perry to complain about Lowman's conduct. Perry explained that Lowman was not supposed to meet with Plaintiff alone—he was supposed to be accompanied by Perry. Perry made it clear that a one-on-one meeting between Plaintiff and Lowman should not occur and that, next time, Plaintiff should go get Perry to sit in on such meetings.

18.    Following the above incidents, Lowman came out of his office one day to remove the trash can from under Plaintiff's desk. All sales employees each had a small trash can underneath their desks. After Lowman removed the trash can, Plaintiff had to replace it herself with a cardboard box, which would often get in the way of her feet. On one occasion, her foot bumped into the cardboard box while Lowman was standing directly behind her, whereupon Lowman screamed "WHY ARE YOU

SUCH AN ANGRY PERSON?" for the entire sales floor to hear. This was very upsetting and embarrassing to Plaintiff.

19.     Plaintiff wrote a note to Perry the same day as the above-described incident complaining that this was the second time in a week Lowman made derogatory and embarrassing statements towards Plaintiff and that if it continued she would report the matter to Lowman's supervisor, Lee Morris. Perry state she would address the matter herself and speak to Lowman about it.

20.     After the above-described incident, there was subsequent incident where Mr. Lowman was standing directly behind Plaintiff in a hallway on her way to the restroom. This was during a time where Plaintiff was sick with pneumonia and had a cough. Standing behind Plaintiff, Lowman leaned directly into Plaintiff until his face was hovering directly above her hair and she could feel his breath on the back of her neck. Lowman proceeded to mock Plaintiff and her illness by imitating her cough and coughing directly into her hair. Plaintiff could feel Defendant's breath on her and was extremely startled, angered, and upset by the incident. On information and belief, Plaintiff orally complained about the incident to Perry as well as other employees.

21.     About three or four weeks after the above incident with Lowman, Lowman and Plaintiff met to review an Employee Disciplinary Action Plan (EDAP) on or around February 4, 2019. Prior to this meeting, Plaintiff had already met with Perry to orally review Plaintiff's performance and goals in December 2018, whereupon Plaintiff was informed by Perry that she was "on track 100%" with regard to performance on calls, with the script, with the software, and related issues of

performance. However, after the performance review with Perry and after Lowman was hired, Lowman instructed all sales employees to double the number of calls and lie about Defendant's services to customers—specifically, to instruct customers that an on-site representative had visited the business and was told by the owner for HOWCO to call them when that was not in fact true. Plaintiff complained about this practice to Perry and expressed discomfort at deceiving and lying to customers. Perry indicated she understood the concerns and would address them with Lowman, however at this point it was already apparent that Lowman had already singled out Plaintiff to get rid of her as an employee. Accordingly, by the time Plaintiff reviewed the EDAP with Lowman, it was clear that Plaintiff was being singled out by Lowman for issues that were pretext for discrimination and retaliation and, in many cases, which applied to similarly situated male employees (two of whom are white) who were never reprimanded or placed on a performance evaluation plan. The same day, Plaintiff made a complaint with Perry. A complaint was also made to Human Resources explaining how Plaintiff was singled out in a discriminatory and retaliatory manner.

22.     Notably, prior to filing the above complaint, Plaintiff met with Michelle Morgan in Human Resources to discuss obtaining a complaint form and inquire the procedure for complaints, particularly since no progress came of Plaintiff's prior complaints to Perry. It was very difficult for Plaintiff to ascertain company policy regarding reporting because she was redirected twice to different people. It reasonably appeared to Plaintiff that the company had no procedure or practice for addressing her complaints and that HR did not want to hear her complaint. Eventually, Plaintiff met

with an individual named Charlie in HR. Charlie explained that if she moved forward with the complaint against Mr. Lowman that she would be fired. Plaintiff indicated that she did wish to proceed due to the seriousness of the issues involved. Charlie replied that the company would have to let her go. Plaintiff sincerely believed this conduct to be illegal—she filled out the complaint and gave it to Charlie at that time.

23.     The next day, Plaintiff received a message from Perry that Plaintiff was terminated. Later, Plaintiff received a letter dated Feb. 6, 2019 characterizing the termination as being based on a pretextual reason of "lack of progress and performance." Notably, in internal communications, Defendant indicated it wanted to keep Plaintiff employed until "she shot herself in the foot" by making the complaint against Lowman and that Defendant's pretextual "official reason for termination is lack of performance during [Plaintiff's] probationary period."

24.     When Plaintiff returned to Defendant's offices to collect her last paycheck and personal belongings and to return her key, Lowman was at the door waiting for her with a box of Plaintiff's belongings and her last paycheck. During the entire interaction, Lowman glowered at Plaintiff with a hateful look and blocked the door with his body. In order to hand the key to James, an employee standing behind Lowman, Plaintiff and James had to physically exchange the key past Lowman, who was blocking the door. Plaintiff reasonably felt this incident was designed by Lowman to harass Plaintiff and make her feel uncomfortable.

25.     Plaintiff has had to retain the undersigned counsel to bring the instant action and will incur attorney's fees for said representation.

## COUNT I—DISCRIMINATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

26.    Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations in paragraphs 1 through 25.

27.    Plaintiff was qualified to perform in her employment position at all material times.

28.    Plaintiff is a member of a protected class and was subjected to discrimination based on her status as a Latina female of color born in Colombia when her performance was appraised based on her protected class status.

29.    Plaintiff was further discriminated against when she was subjected to a hostile work environment based on her protected class status that amounted to an alteration of the terms and conditions of her employment.

30.    Plaintiff was further subjected to discrimination when she was terminated by Defendant for a pretextual reason.

31.    The aforestated acts and omissions by Defendant constituted unlawful discrimination based on Plaintiff's protected class status in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

32.    Defendant's managerial agent(s) approved the discriminatory termination of Plaintiff.

33.    Defendant's agent(s) responsible for terminating Plaintiff were employed in a managerial capacity and acting in the scope of employment.

34.     Plaintiff's discriminatory termination by Defendant was done with malice or reckless indifference to Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964.

35.     As a direct, natural, proximate, and foreseeable result of the aforestated acts of Defendant, Plaintiff has suffered lost wages, pay and future benefits, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT II—RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

36.     Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations in paragraphs 1 through 35.

37.     Plaintiff engaged in numerous complaints concerning her discriminatory treatment as described in the facts common to all counts. Plaintiff's complaints concerning discriminatory treatment amounted to protected activity under Title VII of the Civil Rights Act of 1964.

38.     Plaintiff suffered an adverse employment action when she was placed on the EDAP for pretextual reasons.

39.     Plaintiff suffered an adverse employment action when she was terminated from her employment for pretextual reasons.

40.     The aforestated acts of Defendant constituted unlawful retaliation based on Plaintiff's protected activity in violation of Title VII of the Civil Rights Act of 1964.

41.     Defendant's managerial agent(s) approved the retaliatory adverse acts against Plaintiff.

42.     Defendant's agent(s) responsible for terminating Plaintiff were employed in a managerial capacity and acting in the scope of employment.

43.     Defendant's adverse and retaliatory acts taken against Plaintiff were done with malice or reckless indifference to Plaintiff's civil rights under Title VII.

44.     As a direct, natural, proximate, and foreseeable result of the aforestated acts of Defendant, Plaintiff has suffered lost wages, pay and future benefits, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT III—DISCRIMINATION
### 42 U.S.C § 1981

45.    Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations in paragraphs 1 through 25.

46.    Plaintiff was qualified to perform in her employment position at all material times.

47.    Plaintiff is a member of a protected class and was subjected to discrimination based on her status as a Latina female of color born in Colombia when her performance was appraised based on her protected class status.

48.    Plaintiff was further discriminated against when she was subjected to a hostile work environment based on her protected class status that amounted to an alteration of the terms and conditions of her employment.

49.    Plaintiff was further subjected to discrimination when she was terminated by Defendant for a pretextual reason.

50.    The aforestated acts and omissions by Defendant constituted unlawful discrimination based on Plaintiff's protected class status in violation of 42 U.S.C. § 1981.

51.    Defendant's managerial agent(s) approved the discriminatory termination of Plaintiff.

52.    Defendant's agent(s) responsible for terminating Plaintiff were employed in a managerial capacity and acting in the scope of employment.

53.    Plaintiff's discriminatory termination by Defendant was done with malice or reckless indifference to Plaintiff's civil rights under 42 U.S.C. § 1981.

CALCIANO PIERRO, PLLC

54.     As a direct, natural, proximate, and foreseeable result of the aforestated acts of Defendant, Plaintiff has suffered lost wages, pay and future benefits, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT IV—RETALIATION
### 42 U.S.C. § 1981

55.     Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations in paragraphs 1 through 25 and paragraphs 45 through 54.

56.     Plaintiff engaged in numerous complaints concerning her discriminatory treatment as described in the facts common to all counts. Plaintiff's complaints concerning discriminatory treatment amounted to protected activity under 42 U.S.C. § 1981

57.     Plaintiff suffered an adverse employment action when she was placed on the EDAP for pretextual reasons.

58.     Plaintiff suffered an adverse employment action when she was terminated from her employment for pretextual reasons.

CALCIANO PIERRO, PLLC

59.     The aforestated acts of Defendant constituted unlawful retaliation based on Plaintiff's protected activity in violation of 42 U.S.C. § 1981.

60.     Defendant's managerial agent(s) approved the retaliatory adverse acts against Plaintiff.

61.     Defendant's agent(s) responsible for terminating Plaintiff were employed in a managerial capacity and acting in the scope of employment.

62.     Defendant's adverse and retaliatory acts taken against Plaintiff were done with malice or reckless indifference to Plaintiff's civil rights under 42 U.S.C. § 1981.

63.     As a direct, natural, proximate, and foreseeable result of the aforestated acts of Defendant, Plaintiff has suffered lost wages, pay and future benefits, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT V—DISCRIMINATION
## FLORIDA CIVIL RIGHTS ACT

64.     Plaintiff realleges and adopts, as if fully set forth in Count V, the allegations in paragraphs 1 through 25.

65.     Plaintiff was qualified to perform in her employment position at all material times.

66.     Plaintiff is a member of a protected class and was subjected to discrimination based on her status as a Latina female of color born in Colombia when her performance was appraised based on her protected class status.

67.     Plaintiff was further discriminated against when she was subjected to a hostile work environment based on her protected class status that amounted to an alteration of the terms and conditions of her employment.

68.     Plaintiff was further subjected to discrimination when she was terminated by Defendant for a pretextual reason.

69.     The aforestated acts and omissions by Defendant constituted unlawful discrimination based on Plaintiff's protected class status in violation of the Florida Civil Rights Act of 1992 Ch. 760 Florida Statutes.

70.     Defendant's managerial agent(s) approved the discriminatory termination of Plaintiff.

71.     Defendant's agent(s) responsible for terminating Plaintiff were employed in a managerial capacity and acting in the scope of employment.

72.     Plaintiff's discriminatory termination by Defendant was done with malice or reckless indifference to Plaintiff's civil rights under the Florida Civil Rights Act of 1992 Ch. 760 Florida Statutes

73.     As a direct, natural, proximate, and foreseeable result of the aforestated acts of Defendant, Plaintiff has suffered lost wages, pay and future benefits, emotional

damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT VI—RETALIATION
### 42 U.S.C. § 1981

74.    Plaintiff realleges and adopts, as if fully set forth in Count VI, the allegations in paragraphs 1 through 25 and paragraphs 64 through 73.

75.    Plaintiff engaged in numerous complaints concerning her discriminatory treatment as described in the facts common to all counts. Plaintiff's complaints concerning discriminatory treatment amounted to protected activity under Florida Civil Rights Act of 1992 Ch. 760 Florida Statutes.

76.    Plaintiff suffered an adverse employment action when she was placed on the EDAP for pretextual reasons.

77.    Plaintiff suffered an adverse employment action when she was terminated from her employment for pretextual reasons.

78.    The aforestated acts of Defendant constituted unlawful retaliation based on Plaintiff's protected activity in violation of Florida Civil Rights Act of 1992 Ch. 760 Florida Statutes.

79.    Defendant's managerial agent(s) approved the retaliatory adverse acts against Plaintiff.

80.    Defendant's agent(s) responsible for terminating Plaintiff were employed in a managerial capacity and acting in the scope of employment.

81.    Defendant's adverse and retaliatory acts taken against Plaintiff were done with malice or reckless indifference to Plaintiff's civil rights under Florida Civil Rights Act of 1992 Ch. 760 Florida Statutes.

82.    As a direct, natural, proximate, and foreseeable result of the aforestated acts of Defendant, Plaintiff has suffered lost wages, pay and future benefits, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, a demand a trial by jury as to all issues triable as of right.

Dated this 23rd day of December, 2021.    Respectfully submitted,

*s/ Brian Calciano*

_____
BRIAN CALCIANO
Florida Bar No. 108879
*Counsel for Plaintiff*

**CALCIANO PIERRO, PLLC**
146 Second Street North – Suite 304
St. Petersburg, Florida 33701
(727) 217-5400
brian@flemploymentlaw.com